DANIEL F. COLLINS, PLAINTIFF IN ERROR, v. WEST
JERSEY EXPRESS COMPANY, DEFENDANT IN ERROR.

Submitted March 12, 1908—Decided June 22, 1908.

The plaintiff proved that he was injured in attempting to avoid a
    runaway horse that had been frightened by a collision with a
    wagon carrying the mail, upon which the name of the defendant
    company was painted, from which fact an inference arose that
    it was defendant's wagon. Defendant proved that neither the
    colliding mail wagon nor its driver was engaged in defendant's
    services; that its business was not that of carrying the mail,
    although a horse and wagon had been let out by it to another
    company for that purpose. *Held,* that the direction of a verdict
    for defendant was proper.

On writ of error to the Supreme Court.

For the plaintiff in error, *Jefferson & Wescott.*

For the defendant in error, *Bourgeois & Sooy.*

The opinion of the court was delivered by

MINTURN, J. The substantial ground of complaint in this
case, as presented by the assignments of error, is that the
trial judge at the close of the case directed a verdict for de-
fendant under the following state of facts:

On the 15th of March, 1901, while a wagon was being
loaded on Central avenue, in Atlantic City, another wagon
carrying the United States mail, but bearing the name of the
defendant upon it, struck the former wagon, and the horse
drawing the same, taking fright from the impact, dashed down
the avenue up which plaintiff was coming. The plaintiff,
in an attempt to avoid the runaway, broke his leg by falling
over a lumber pile on the street, and instituted this suit to
recover damages for his injuries. The defendant disclaimed
responsibility by denying that the driver of the mail wagon
was in defendant's employ at the time of the accident.

The testimony in support of the relationship of master and servant was as follows: Lister, the driver of the wagon which was struck, was asked: "How did it happen? A. Why the West Jersey express wagon struck my wagon. I told him (the driver) to hold up; don't strike me; don't run into me." Newman, the driver of the mail wagon, was asked upon cross-examination whether upon a former trial he had not testified that at the time of the accident he was employed by the defendant, and he replied, "Not to my knowledge. If I did so it was a mistake." The record of that trial was admitted to show that he did so testify.

. The plaintiff's case, thus constructed upon a basis of inferences, was met by proof by defendant that the driver of the mail wagon had not been in the employ of the defendant during the year 1901; that he had been paid during that year by the railway company, in support of which the vouchers of the company were produced and admitted in evidence; that the West Jersey and Seashore Railway Company alone held the contract for the carriage of the mail during that year and had not let it out in whole or in part; that the defendant held no such contract and that its only connection with the business was to let out a horse and wagon to the railway company for use in that service.

Upon this uncontradicted proof the direction of a verdict for the defendant by the trial court was manifestly proper. *McCormack* v. *Standard Oil Co.*, 31 *Vroom* 243.

The judgment, therefore, should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Green, Gray, Dill, J.J.   16.

*For reversal*—None.